# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

RICARDO IGNACIO GILL,

     Plaintiff,

v.                             Case No. 3:20-cv-535-MMH-JRK

MARK INCH, et al.,

     Defendants.

_____

## ORDER

### I. Status

Plaintiff Ricardo Ignacio Gill, a death-sentenced inmate in the custody of the Florida Department of Corrections (FDOC) and housed at Union Correctional Institution (UCI), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1; Complaint) under 42 U.S.C. § 1983. Gill sues these Defendants: (1) Mark Inch, Secretary of the FDOC; (2) John Palmer, Regional Director of Region II; (3) Barry Reddish, Warden of Florida State Prison (FSP); (4) Jeffery McClellan, Assistant Warden of FSP; (5) Travis Lamb, Warden of UCI; (6) J. Falk, Assistant Warden of UCI; (7) Tifani Knox, Assistant Warden of UCI; (8) Richard Andrews, Classification Supervisor at UCI; (9) J. Lindsey, Colonel at UCI; and (10) E. Biascochea, Major at UCI. Id. at 2-6. Gill asserts that Defendants' prolonged and arbitrary application of the FDOC's non-

contact visitation policy violates his due process rights under the Fifth and Fourteenth Amendments.[1] Id. at 9.

This matter is before the Court on Defendants Inch, Palmer, Reddish, McClellan, Lamb, Knox, Andrews, Lindsey, and Biascochea's Motion to Dismiss (Doc. 33; Motion). The Court advised Gill that the granting of a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and allowed him to respond to the Motion. See Order of Special Appointment; Directing Service of Process upon Defendants; Notice to Plaintiff (Doc. 7). Gill filed a response in opposition to the Motion. See Plaintiff's Response to Defendants' Motion to Dismiss (Doc. 37; Response). The Motion is ripe for review.

## II. Dismissal of Claims against Defendant J. Falk

Before resolving the Motion, the Court addresses the status of Gill's claims against Defendant J. Falk. On July 20, 2020, the Court directed service of process on all Defendants. See Order of Special Appointment (Doc. 7). On August 10, 2020, the United States Marshals Service returned the service of process as unexecuted for Falk, explaining that service could not be executed because Falk is "[r]etired" and no longer works for the FDOC. See Doc. 19. The

---

[1] Gill also references the Equal Protection Clause of the Fourteenth Amendment, but Gill's allegations appear intertwined with his due process claim.

FDOC then, <u>in camera</u>, provided the Court with Falk's forwarding address.[2]
<u>See</u> Sealed Notice of Defendant's Confidential Address (Doc. S-21). On
September 10, 2020, the Court redirected service of process on Falk at the
newly provided forwarding address and further directed the United States
Marshals to use reasonable efforts to locate and serve Falk. <u>See</u> Order
Redirecting Service of Process Upon Defendant Falk (Doc. 22). On September
30, 2020, the United States Marshals Service again returned the service of
process as unexecuted for Falk. <u>See</u> Doc. S-25. In the written remarks on the
second unexecuted return of service, the deputy United States Marshal
specified that on September 10, 2020, he tried to serve Falk at the forwarding
address that the FDOC provided. <u>Id.</u> When those efforts failed, on September
21, 2020, the Marshals Service tried to locate Falk at another address and left
a card when no one answered the door. <u>Id.</u> That same day, the United States
Marshals Service received a phone call from an individual at the additional
address, who advised that he/she had owned the home for about eight years
and that Falk did not live at the residence nor had he lived there previously.
<u>Id.</u>

Thereafter, the Court directed Gill, by November 4, 2020, to show cause
why the claims against Falk should not be dismissed from this action. <u>See</u>

---

[2] In the Sealed Notice of Defendant's Confidential Address, the FDOC also
provided the Court with Falk's full name – Joseph A. Falk.

Order to Show Cause (Doc. 26). Gill responded to the Court's Order, arguing "it is not incumbent upon [him] to provide aid to the U.S. Marshal in serving J Falk." <u>See</u> Answer to Court to Doc. 26 Order to Show Cause to Service on Defendant J Falk (Doc. 31). He asserts that he has provided the Court with all known information on Falk's location and that as a state prisoner, he lacks access to the resources available to the United States Marshals Service who "with all due diligence can locate a service address for J Falk and perfect service." <u>Id.</u> at 2.

Upon review of the record, the Court finds the FDOC and the United States Marshals Service have used reasonable efforts to effect service of process on Defendant Falk. <u>See</u> <u>Richardson v. Johnson</u>, 598 F.3d 734, 740 (11th Cir. 2010) (finding that district court must determine whether a former prison employee can be located with reasonable effort, and if efforts do not prove successful, may properly dismiss claims against unserved defendant). After the FDOC advised the Court that Falk was no longer an FDOC employee, it provided the Court with his full name and last known address. The United States Marshals Service then tried to serve Falk at that last known address and when that proved unsuccessful, used reasonable efforts to locate an alternate address for Falk and attempted to serve him there. The United States Marshals Service's efforts, however, were unsuccessful. Thus, the Court finds that Gill's claims against Falk are due to be dismissed without prejudice.

# III. Gill's Allegations

In his Complaint, Gill alleges that Defendants, each in their individual and official capacities as "member[s] of the Institutional Classification Team," arbitrarily imposed and continue to impose on Gill a non-contact visitation policy that does not apply to him, in violation of his Fifth and Fourteenth Amendment rights. Complaint at 6-16; Response at 5.[3] Gill explains that under rule 33-601.735, Florida Administrative Code, the warden, upon the ICT's recommendation, may temporarily place an inmate "in [s]egregated/[n]on-[c]ontact visitation status in order to maintain the security and good of the institution." Complaint at 7. The ICT bases its recommendation on various factors, including, <u>inter alia</u>, the inmate's past behavior during visitations; disciplinary history involving drugs, contraband, violence, or visiting policy violations; evidence that the inmate has possessed, transferred, or sold drugs or alcohol; the inmate's confirmed membership in a security-threat group; or a positive drug or alcohol test. <u>Id.</u> at 7-8. Gill contends that if the warden approves the ICT's recommended non-contact status, the inmate is "not allowed to hug, touch, kiss, and enjoy the basic human need of having physical contact that [is] enjoyed by other similarly situated inmates." <u>Id.</u> at 8. According to Gill, because of the stringent nature of non-contact conditions,

---

[3] In his Response to Defendants' Motion, Gill clarifies that he sues each Defendant in their official and individual capacities. Response at 1.

prison officials may only place an inmate on non-contact status temporarily and are required to review the inmate's visitation status every six months to ensure the inmate is in the least restrictive environment necessary to meet legitimate security concerns. <u>Id.</u> He states that anything beyond the least restrictive means "constitute[s] extraordinary circumstances which are not considered incidental to the normal types of conditions experienced by individuals in prison." <u>Id.</u> at 8-9. Gill alleges that as a member of the ICT, each Defendant has "specific authority and responsibilities relative to the operation and management of the Inmate Classification System," including "making [i]nmate status decisions" and placing inmates under non-contact status. <u>Id.</u> at 2-6.

Gill maintains, however, that rule 33-601.735 is unconstitutionally vague, and he argues that Defendants' application of the rule to him violates his right to procedural due process and equal protection of the law under the Fifth and Fourteenth Amendments. <u>Id.</u> at 16. According to Gill, Defendants rely on the "the vagueness of [this rule to] subject[] [him] to atypical and significant hardships for an extended period of time without any definite time limitations." <u>Id.</u> To support this allegation, Gill asserts that Defendants have a custom, policy, and practice of misapplying rule 33-601.735 and using non-contact visitation as a long-term punitive device against him even though he has not engaged in the enumerated prohibited conduct. <u>Id.</u> He explains that he

is "confined under [d]eath [r]ow conditions" and has been under a non-contact visitation status for sixteen years, "at various times from July 27, 2004 up to present" day and "as recent as April 21, 2020," with Defendants regularly withholding certain rights and visitation privileges. Id. at 6, 9. Gill argues that Defendants failed to review his non-contact status for "11 ½ years, from July 19, 2005 to January 19, 2016," and the criteria on which Defendants relied to continue his non-contact status afterwards did not comply with the requirements of rule 33-601.735. Id. at 15.

According to Gill, his continued "placement on [n]on-[c]ontact visitation is for the purpose of punishment rather than to serve a valid security concern." Id. at 6. To demonstrate the punitive and capricious nature of Defendants' restrictions, Gill notes that Defendants have sporadically allowed him to enjoy contact visits on a "case-by-case basis," and further that Defendants know Gill exhibited exemplary behavior during those contact visits. He also maintains that prison officials know he participates in open recreation with seventy-five other inmates without incident. Id. at 15. However, despite Gill's exemplary conduct, Defendants routinely find Gill to be a threat and arbitrarily prohibit contact visits without justification or supporting evidence. Id. Gill asserts that he is then forced to visit with his family and friends through glass barriers while other similarly situated inmates can enjoy human contact with their visitors. Id. Gill argues that by engaging in this practice, Defendants have

hindered his ability to carry on "the ordinary affairs of life in the same manner and in a like extent had he not been subject to the unconstitutional conduct of Defendants . . . ." Id. at 20. He explains that as a direct and proximate result of Defendants' practice and policies, he has and will continue to suffer "physical and mental anguish." Id. at 19-20. As relief, Gill requests a declaratory judgment deeming Defendants' use of the non-contact policy unconstitutional as applied to him and enjoining Defendants from enforcing the non-contact visitation policy against him now and in the future. Id. at 22-23. He also seeks $160,000 in compensatory damages; $16,000 in punitive damages from each Defendant; as well as an award of costs. Id. at 21-22.

## IV. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

## V. Summary of the Arguments

In their Motion, the remaining Defendants request that the Court dismiss "part of" Gill's claims against them. Motion at 1. They argue that the Court cannot grant Gill's request for declaratory and injunctive relief against them in their individual capacity, and that Gill is not entitled to compensatory and punitive damages because he has not alleged sufficient physical injuries resulting from Defendants' acts or omissions. Id. at 5-7. Defendants also maintain that Gill fails to state a plausible procedural due process claim against them, and that they are entitled to qualified immunity for their discretionary decision to place Gill on non-contact visitation status.[5] Id. at 7-12. Finally, they contend that some of Gill's allegations are barred by the

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] Defendants do not address or seek dismissal of Gill's Fourteenth Amendment equal protection claim. See generally Motion.

statute of limitations. Id. at 13. In his Response, Gill urges the Court to deny

Defendants' Motion and maintains that he states plausible due process and

equal protection claims under the Fourteenth Amendment and that

Defendants are not entitled to qualified immunity. Response at 2-10. He also

asserts that while Defendants' initial unconstitutional acts may have occurred

outside the statute of limitations, he has alleged a reoccurring and ongoing

violation that "show[s] a pattern of behavior." Id. at 10.

## VI. Analysis

### a. Due Process Violation

The Court begins its analysis with Defendants' argument that Gill fails

to state a plausible claim under the Due Process Clause of the Fourteenth

Amendment. Defendants assert that Gill fails to show "a deprivation which

imposes a significant and atypical hardship in relation to the ordinary

incidents of prison life" because he does not have a liberty interest in

"temporary suspension or restrictions of his visiting privileges." Motion at 8-

10. In support of this contention, Defendants rely on the Supreme Court's

decision in Overton v. Bazzetta, 539 U.S. 126 (2003), arguing that in Overton,

the Court upheld the constitutionality of an even more restrictive prison

visitation policy. Motion at 9. In Overton, the Court considered whether a

Michigan prison regulation imposing a two-year ban on visitation privileges

for prisoners convicted of two substance abuse infractions violated the

constitution. 539 U.S. at 134. The Court found the regulation did not violate the Fourteenth Amendment's due process mandates because it served the legitimate goal of deterring the use of drugs and alcohol within prisons. Id. In doing so, the Court held that "[d]espite the importance of the rights [] at issue . . . withholding such privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." Id. Nevertheless, the Court recognized that the restriction was "severe," and observed that if "the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." Id. at 137. Defendants here assert that, like the prisoners in Overton, Gill fails to "allege that visitors are completely prevented from visiting in prison, but [instead asserts] the visits occur behind a protective barrier." Motion at 8. And, according to Defendants, "withdrawal of visitation privileges for a limited period of time as a means of effecting prison discipline is 'not a dramatic departure from accepted standards for conditions of confinement.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 485 (1995)).

   In Response, Gill argues that the facts of his case are distinguishable from those in Overton and that he has alleged facts sufficient to demonstrate a prolonged and arbitrary withdrawal of contact privileges. Response at 4-5.

He asserts that rules 33-601.731 and 33-601.735, Florida Rules of Administrative Code, establish a liberty interest in contact visitation and are "designed to instruct administrators and curtail arbitrary use of state power" in restricting that liberty interest. Response at 3. He explains that the rules outline which offenses justify a restriction in a prisoner's visitation privileges and provide a time limit for that restriction. <u>Id.</u> According to Gill, however, he has not committed any offense justifying the prohibition of contact visitation under the rules and Defendants have arbitrarily extended suspension of his non-contact visitation with "no hearings, no notice of changes, [and] simply on the[ir] whim . . . ." <u>Id.</u> at 4-5. He argues that Defendants do not consider him a security threat because they allow him to participate in open yard time without restraints, he is not confined to a security cell, and he is otherwise "given the same privileges as other inmates that are not considered security threats except having his visitation restricted." <u>Id.</u> at 10.

Courts "examine procedural due process questions in two steps; the first asks whether there exists a liberty or property interest that has been interfered with by the state[;] the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989); <u>see also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221-22 (2005). The issue before the Court at this stage of the

proceeding centers on the first step – whether Gill has alleged a liberty interest.

Liberty interests may arise either from the Due Process Clause or from state law. Meachum v. Fano, 427 U.S. 215, 225-27 (1976). The Due Process Clause does not provide an inmate with a liberty interest or right to "unfettered visitation." See Thompson, 490 U.S. at 460-61 (finding that "[t]he denial of prison access to a particular visitor . . . is not independently protected by the Due Process Clause"). As such, even viewing Gill's allegations in the light most favorable to him, as the Court must, he fails to allege a violation in a liberty interest protected by the Due Process Clause of its own force. Nevertheless, taking Gill's allegations about his conditions as true, the Court finds that the alleged restrictions on Gill's contact visitation, particularly when imposed, as he asserts, indefinitely and arbitrarily, give rise to a liberty interest under state law.

Defendants argue that Overton precludes a prisoner from claiming a liberty interest in a visitation restriction. However, Defendants' reliance on Overton is misplaced. The Court in Overton focused on whether a particular regulation limiting a prisoner's liberty interest was warranted, conducting a fact-intensive inquiry that balanced the penological benefits of the regulation and the prisoner's right to visitation. Overton, 539 U.S. at 135. Overton did not specifically discuss how a court determines whether that plaintiff alleged a

liberty interest at the pleading stage. Rather, to determine if the state has created a protected liberty interest here, the Supreme Court has directed that courts must focus on the nature of the deprivation at issue. <u>Sandin</u>, 515 U.S at 483. In evaluating the nature of the deprivation, the Court instructed that state-created liberty interests rising to the level of requiring due process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose [] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> 484. That is to say, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves" when compared to the typical conditions of incarceration. <u>Wilkinson</u>, 545 U.S. at 223.

Here, Gill alleges that prisoners are allowed contact visitation and when a prisoner is on non-contact visitation status, prison officials are required to provide a periodic review of that restriction. According to Gill, however, for sixteen years, Defendants have arbitrarily and with punitive intent placed Gill under non-contact status while other similarly situated prisoners enjoy their right to contact visits. He asserts that Defendants have limited his contact

visitation without notice or an opportunity to be heard, and absent a rule violation justifying the restriction. Construed liberally, as the Court must do on a motion to dismiss, Gill has adequately alleged conditions that may pose an atypical and significant hardship in relation to the ordinary incidents of prison life, implicating a state-created liberty interest. Thus, the Motion is due to be denied to the extent Defendants contend Gill has failed to state a plausible claim for relief.

## b. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity for Gill's Fourteenth Amendment due process claims for monetary damages against them in their individual capacities. Motion at 10-12. In response, Gill argues that Defendants are not entitled to qualified immunity because they have arbitrarily and in a prolonged unnecessary manner restricted a liberty interest that is clearly established. Response at 8-9.

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)) . . . . Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation.

> Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). Our inquiry "can begin with either prong." Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014).

Marbury v. Warden, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal citations modified).

Gill does not appear to refute Defendants' argument that Defendants were engaged in discretionary functions during the events at issue. Accepting Gill's allegations about each Defendant and considering those allegations independently, the Court finds that Gill has alleged facts sufficient to state a plausible Fourteenth Amendment due process claim against each Defendant. Thus, Defendants' qualified immunity argument is unavailing at this stage of the proceeding.

### c. Declaratory and Injunctive Relief

Defendants argue that Gill's request for declaratory and injunctive relief against them in their individual capacities should be dismissed because § 1983 does not permit injunctive relief against state officers sued in their individual capacities. Motion at 5-6. In support, Defendants rely on the Seventh Circuit Court of Appeals' opinion in Greenawalt v. Indiana Dep't of Corr., 397 F.3d 587, 589 (2005), in which the court said, "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." Motion at 5. Defendants also rely on a footnote in the

Tenth Circuit Court of Appeals' opinion in <u>Brown v. Montoya</u>, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011), in which the court states, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Motion at 5. In his Response, Gill argues that it is his "intention to sue all Defendants in their official capacities as well as their individual capacities for any and all forms of relief available." Response at 1.

The parties do not cite, and the Court is unaware of, an Eleventh Circuit decision that specifically decided the issue of whether it is proper to seek injunctive relief against a state official sued in their individual capacity under § 1983. Notably, in <u>Attwood v. Clemons</u>, 818 F. App'x 863 (11th Cir. 2020), the Honorable Britt Grant wrote an extensive concurrence analyzing the distinction between individual and official capacity claims raised in a § 1983 case, and noted that a successful § 1983 suit targeting a government official in their individual capacity "may result in an award of monetary damages, declarative relief, or injunctive relief to correct the constitutional violation." <u>Attwood</u>, 818 F. App'x at 872 (Grant, J., concurring in part). The majority, however, took "no position on the concurrence's view," explaining it would not make a finding on an issue not before it. <u>Id.</u> at 869; <u>see also</u> <u>Executive 100, Inc. v. Martin Cnty.</u>, 922 F.2d 1536, 1542 n.7 (11th Cir. 1991) ("[W]e do not reach the issue of whether suits against officials for prospective injunctive relief may

be brought only against defendants in their official capacities."). Further, when presented with this issue on a motion to dismiss, one jurist of this Court has declined to find that injunctive relief cannot remedy personal liability in a § 1983 suit, <u>see</u> <u>Hatcher v. Desoto Cnty. Sch. Dist. Bd. Of Educ.</u>, 939 F. Supp. 2d 1232, 1236 (M.D. Fla. 2013), while another has endorsed, albeit without discussion, the position of Defendants, <u>see</u> <u>Wright v. Barnes</u>, No. 3:14-cv-479-J-39JBT, 2015 WL 9581765, at *2 (M.D. Fla. Dec. 30, 2015).

Here, no one disputes that Gill can proceed with his request for injunctive and declaratory relief against Defendants in their official capacities. Because those requests will proceed and given the current procedural posture of this case, the Court declines to find that declaratory or injunctive relief against Defendants in their individual capacity cannot remedy Gill's alleged constitutional violation. <u>See, e.g.</u>, <u>Hall v. Jarvis</u>, No. 3:10-cv-442-99MMH-TEM, 2011 WL 971125, at *6 (M.D. Fla. Mar. 2, 2011) (considering same argument on a motion to dismiss, explaining "[u]nder these circumstances, whether [p]laintiff is seeking injunctive and declaratory relief against [d]efendant in his official or individual capacity seems practically inconsequential . . . . In either capacity, [d]efendant is the person to be enjoined – and no one else."). Thus, Defendants' Motion will be denied without prejudice on this issue.

d. <u>Lack of Physical Injury</u>

Next, Defendants assert that Gill's request for punitive and compensatory damages must be dismissed because he fails to allege a physical injury resulting from their purported unconstitutional acts. Motion at 6-7. In response, Gill contends that because he has suffered a loss of liberty "resulting from improper retention in a restrictive classification status," he is entitled to "monetary damages." Response at 2.

At issue is 42 U.S.C. § 1997e(e), which reads:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .

42 U.S.C. § 1977e(e). Until recently, the Eleventh Circuit read this statute to mean that "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." <u>Brooks v. Warden</u>, 800 F.3d 1295, 1307-08 (11th Cir. 2015). However, in <u>Hoever v. Marks</u>, 993 F.3d 1353 (11th Cir. 2021), the Eleventh Circuit reexamined § 1997e(e)'s physical injury requirement and precisely defined its limitation on the damages a prisoner can recover for constitutional violations. The court held and instructed "the district court to dismiss only a request for compensation for an alleged mental or emotional injury in the absence of an alleged physical injury." <u>Id.</u> at 1361. It

reasoned that "a plaintiff – at least one alleging a constitutional violation – need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious." Id.

In the Complaint, Gill alleges that Defendants have used "[n]on-[c]ontact visitation as a long-term punitive status with actual knowledge of its effect on [Gill's] physical and psychological well being"; and that he "has in the past and will in the future endure physical and mental anguish." Complaint at 16-20. He requests compensatory and punitive damages. Id. at 21-22. Taking Gill's allegations as true, § 1997e(e) precludes his request for compensatory damages because he fails to allege facts supporting his conclusory statement that Defendants' actions resulted in physical "anguish." However, because he has alleged that Defendants violated his constitutional rights willfully and with "actual knowledge," his lack of physical injury does not prohibit his potential recovery of punitive damages. Thus, Defendants' Motion is due to be granted as to Gill's request for compensatory damages and denied as to his request for punitive damages.

e. Statute of Limitations

Last, the Court addresses Defendants' contention that any portion of Gill's claim involving conduct that allegedly occurred before May 29, 2016, is barred by Florida's four-year statute of limitations. Motion at 12-13. In his Response, Gill asserts that "while some of the facts germane to this recurrent

and ongoing violation were perpetuated by the Defendants beyond the statute of limitations, if it is applicable, all the facts of this case should be considered, as [ ] Defendants, if the case is brought before a jury, will try and bring up past behaviors [] [of] [Gill] . . . ." Response at 10.

Actions "brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir. 2014) (citation omitted). In Florida, "[t]he applicable statute of limitations in a § 1983 lawsuit is the four-year Florida state statute of limitations for personal injuries." Omar v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam) (citations omitted); see Ealy v. GEO Grp., Inc., 667 F. App'x 739, 740 (11th Cir. 2016) ("This Court has on several occasions applied the four-year residual limitations period under Florida's personal injury statute, Florida Statutes § 95.11(3)(p), to 42 U.S.C. § 1983 claims."). Federal law determines when the statute of limitations begins to run. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under federal law, the statute of limitations begins to run when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

An exception to the general accrual rule is the "continuing violation" doctrine. "Under the continuing violation doctrine, the statute of limitations is

tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." <u>Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.</u>, 502 F.3d 1316, 1322 (11th Cir. 2007). In other words, the doctrine "permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." <u>Robinson v. United States</u>, 327 F. App'x 816, 818 (11th Cir. 2007). "When the violation alleged involves a continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." <u>Id.</u> "The critical distinction in the continuing violation analysis . . . is whether the plaintiff [] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." <u>Knight v. Columbus, Ga.</u>, 19 F.3d 579, 580-81 (11th Cir. 1994). "Where a continuing violation is found, the plaintiff[ ] can recover for any violations for which the statute of limitations has not expired." <u>Id.</u> at 581.

Gill alleges that the due process violations and "[t]he injurious occurrences hereinafter complained of [and] affecting [him] occurred at various times from July 27, 2004 up to present." Complaint at 6. He also states, "These injurious occurrences are as recent as April 21, 2020 where [n]on-contact [v]isiting [s]tatus was again continued . . . ." <u>Id.</u> Given these allegations, and only for the purpose of ruling on the Motion, the Court finds Gill has plausibly

alleged a "continuing violation" that may extend the limitations period. See, e.g., Johnson v. City of Warner Robins Ga., No. 5:15-CV-419(CAR), 2018 WL 1095563, at *9-*15 (M.D. Ga. Feb. 28, 2018) (finding due process claim based on four-and-one-half-year administrative segregation was continuing violation for statute of limitations purposes). Thus, Defendants' Motion is due to be denied as to this issue.

In consideration of the foregoing, it is now

**ORDERED**:

1. The claims against Defendant J. Falk are **DISMISSED without prejudice**. The **Clerk** shall terminate J. Falk as a Defendant in this case.

2. Defendants' Motion to Dismiss (Doc. 33) is **GRANTED to the extent** Gill requests compensatory damages. The Motion (Doc. 33) is otherwise **DENIED**.

3. Defendants must file their answers to Gill's Complaint **by June 28, 2021**. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-7

C:     Ricardo Ignacio Gill, #105559
          Omar J. Famada, Esq.